**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**TINA M. EVANS,**

                **Plaintiff,**

    **v.**                            **Civil Action 2:20-cv-3395**
                                            **Judge James L. Graham**
                                            **Magistrate Judge Jolson**

**COMMISSIONER OF
SOCIAL SECURITY,**

                **Defendant.**

**<u>REPORT AND RECOMMENDATION</u>**

Plaintiff, Tina M. Evans, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.**      **BACKGROUND**

Plaintiff filed her applications for DIB and SSI in February 2017, alleging that she was disabled beginning January 16, 2017. (Tr. 179–92). After her applications were denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a hearing on January 29, 2019, before issuing a decision denying Plaintiff's applications. (Tr. 34–66, 12–33). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final for purposes of judicial review. (Tr. 1–6).

Plaintiff filed this action on July 2, 2020 (Doc. 1), and the Commissioner filed the administrative record on November 25, 2020 (Doc. 9) and two identical Supplemental Transcripts on January 12, 2021 (Doc. 12) and March 1, 2021 (Doc. 15). Shortly thereafter, Plaintiff filed her

Statement of Errors (Doc. 16) and the Commissioner filed his Opposition (Doc. 17). Plaintiff did not file a reply so the matter is ripe for review.

### A. Plaintiff's Testimony

The ALJ summarized Plaintiff's testimony. Relevant here:

> [The Plaintiff] testified to significant neuropathy in her hands and feet. She also testified that neck and mid back pain were disabling, preventing her from working and performing daily activities. She alleged that this was why she could no longer work for subway, noting she could not lift things or stand and that it was painful to look down or reach overhead.

(Tr. 23).

### B. Relevant Medical History

In addition, the ALJ summarized Plaintiff's medical records:

> The [Plaintiff] has a history of breast cancer with initial biopsy on the alleged onset date. She initially treated with chemotherapy, between February 8, 2017, and April 12, 2017. She subsequently underwent bilateral mastectomy May 24, 2017, followed by additional chemotherapy from July 17, 2017, through August 28, 2017. Records during that time support the limitations noted in the above residual functional capacity with the [Plaintiff] reporting both nausea and fatigue during the time that she was being treated with chemotherapy with treating physicians noting her fatigue to be related to chemotherapy and an unexpected side effect of same (10F/6, 13, 19, 21, 26 and 30; 11F/3-4; 12F/35-36; 17F/4, 13 and 15; 18F/8 and 27 and 19F).
>
> . . .
>
> [In July 2017] the [Plaintiff] was in the middle of her second round of chemotherapy which ended on August 28, 2017, (12F/39). Admittedly, September office visit notes showed the [Plaintiff] to be feeling better and reporting less/denying fatigue, however she was experiencing the crying episodes and mild depression noted above (18F/8). Moreover, she had additional procedures relating to breast cancer after the state agency review and subsequent to the January 16, 2018, 12[-]month mark.
>
> Records indicate she had tissue expanders put on October 5, 2017, with filling visits and breast implant insertion February 1, 2018 (13F/l and 9). Although fatigue complaints were generally denied in the later records, the [Plaintiff] experienced back, neck and abdominal pain well after January 16, 2018. March office visit notes revealed no new complaints and a visit March 16, 2018, note pain was not an issue (3F/l and l 7F/8).

A year after mastectomy records from May 23, 2018 note complaints of acute left sided abdominal and rib pain. Since rib pain could be related to her history of breast cancer a CT was performed. It noted no acute findings in the chest, abdomen or pelvis and the implants were intact. Further, there was no evidence of malignancy or metastatic disease (15F/l-10). While she was instructed to follow up with a gastroenterologist, there is no evidence of any related medically determinable severe impairment.

On October 11, 2018, removal and replacement with capsulectomy was performed. Office visit notes of October 16, 2018, note the [Plaintiff] to have denied back pain or stiffness as well as joint pain. She further denied anxiety, difficulty concentrating, balance issues, or memory loss (19F/l-7).

By December 4, 2018, the oncology follow up records state that she had no complaints other than appearance with the next visit scheduled six months out (6F/l).

(Tr. 22–23).

The [Plaintiff] also complained of upper back pain, worse with sitting, laying down and lifting. She treated with physical therapy and prescriptions for narcotic pain medications to treat pain during the time the [Plaintiff] was treating for breast cancer (7F/2-3, 8F, 13F/5, 9 and 15, 15F/l-10, and l 7F/18, 20 and 25, and 18F 10-12). There was no referral to neurology and no MRI performed.

September 15, 2017, x-rays of the cervical and thoracic spine revealed moderate multilevel degenerative disc disease (Id./82/83). However, physical exam findings were unremarkable on evaluation September 28, 2017, with normal strength and intact sensation in the upper extremities (Id.18-22). Moreover, incidental findings in the May 2018 abdominal CT, noted only mild degenerative changes of the spine (Id./86). Likewise, x-rays of the left non-dominant hand August 29, 2018, revealed only mild osteoarthritic changes, primarily in the thumb (Id./87- 88).

There were no treatment records after December 4, 2018, to support a finding of severe impairment resulting from these conditions.

(Tr. 23).

## C.    The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirement through December 31, 2020, and that she had not engaged in substantial gainful employment since January 16, 2017, the date Plaintiff became disabled.  (Tr. 20).  The ALJ also determined that from January 16, 2017,

through December 4, 2018—the period during which the Plaintiff was under a disability—she had the following severe impairment: malignant carcinoma of the breast status post bilateral mastectomy with chemotherapy before and after, as well as reconstructive surgery (X2). (*Id.*). From January 16, 2017, through December 4, 2018, the claimant did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 21).

Ultimately, the ALJ assessed Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that, from January 16, 2017, through December 4, 2018, the [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with no limitation in walking, standing or sitting; with lifting and carrying under ten pounds; no climbing of letters, ropes or scaffolds; with occasional climbing of ramps/stairs and turning at the neck, but can frequently bend and turn at the waist, balance, kneel, stoop, crouch, crawl, use the upper extremities bilaterally, use the feet bilaterally for operation of foot pedals, drive during the course of employment, reach forward, backward, side to side, overhead, and downward; with frequent gross and fine manipulation, including fingering and feeling, but having the need to avoid concentrated exposure to vibrations, working at high exposed places and moving mechanical machinery; and would be off task 25% of the work day due to fatigue, side effects of medication and the disease process and would require absences of two or more per month for medical treatment and recovery.

(Tr. 21).

Upon "consideration of the evidence of record," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the evidence and other evidence in the record for the reasons explained in this decision." (Tr. 26).

As to the opinion evidence, the ALJ determined,

> As for the opinion evidence, the state agency determined that the [Plaintiff]'s impairments, namely breast cancer and the sequelae of treatment would not last 12 months or more (1A-2A). The initial evaluation took place May 4, 2017, just after the first round of chemotherapy and before mastectomy. The reconsideration opinion issued July 27, 2017, likewise determined that durational requirements

4

were not met (5A-6A).

(Tr. 22).

The ALJ determined that from January 16, 2017, through December 4, 2018, Plaintiff was unable to perform any past relevant work. (Tr. 23). Relying on the vocational expert's testimony the ALJ further determined that, from January 16, 2017, through December 4, 2018, given her age, education, work experience and RFC, there were no jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (Tr. 24). The ALJ found Plaintiff was under a disability, as defined by the Social Security Act, from January 16, 2017, through December 4, 2018. (*Id.*)

Yet, medical improvement occurred as of December 5, 2018; the date Plaintiff's disability ended. (Tr. 25). Beginning December 5, 2018, Plaintiff has not had an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, Plaintiff no longer has a severe impairment or combination of impairments. (*Id.*). Because Plaintiff no longer had a severe impairment or combination of impairments, the ALJ found that Plaintiff's functional capacity for basic work activities had increased. (Tr. 26). Consequently, the ALJ concluded that Plaintiff's disability ended December 5, 2018, and Plaintiff has not become disabled again since that date. (Tr. 27).

## II.    STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).  To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III.    DISCUSSION

Plaintiff contends the ALJ erred at Step 2 by failing to find Plaintiff's degenerative disc disease; arthritis, neuropathy; fatigue; and chronic right shoulder pain as medically determinable impairments.  (*See* Doc. 16 at 4–6).  Plaintiff next asserts that the ALJ's determination that she experienced medical improvement as of December 8, 2018, is not supported by substantial evidence.  (*Id.* at 6–10).

### A.  Step Two

At step two, the ALJ must consider whether Plaintiff's alleged impairments constitute "medically determinable" impairments. *See* 20 C.F.R. §§ 416.920(a)(4)(ii); 404.1520(a)(4)(ii).  A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques[,]" and "must be established by objective medical evidence from an acceptable medical source . . . not [the claimant's] statement of symptoms . . . ."  20 C.F.R. § 404.1521.  Additionally, an impairment must meet the durational requirement, meaning, "it must have lasted or must be expected to last for a continuous period of at least 12 months."  20 C.F.R. § 404.1509.  "If an alleged impairment is not medically determinable, an ALJ need not consider that impairment in

assessing the RFC." *Jones v. Comm'r of Soc. Sec.*, No. 3:15-cv-00428, 2017 WL 540923, at *6 (S.D. Ohio Feb. 10, 2017).

In order to establish a medically determinable impairment under the Act, the impairment must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. So a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. 20 C.F.R. §404.1521. Further, "[u]nless [an] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §404.1509. Plaintiff bears the burden of establishing a medically determinable impairment. *See* 20 C.F.R. §404.1512; *see also Watters v. Comm'r of Soc. Sec.*, 530 F. App'x 419, 421 (6th Cir. 2013) ("Although the standard is de minimis, the plaintiff still bears the burden of demonstrating that he suffers from a medically determinable physical impairment."); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that burden is on claimant to prove severity of impairment). It is Plaintiff's burden to provide medical evidence showing that she has an impairment(s), how severe it is, and how it affects her functioning during the time she claims to be disabled. *See* 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled. You must provide evidence.").

Here, Plaintiff filed for disability on February 9, 2017, alleging disability onset three weeks before due to a diagnosis of breast cancer, specifically "stage 2 breast cancer" and "invasive mammary carcinoma." (Tr. 22, (relying on Tr. 186, 209)). The ALJ acknowledged Plaintiff's hearing testimony complaining of significant neuropathy in her hands and feet, and that neck and mid-back pain were disabling, preventing her from working and performing daily activities

(Tr. 23, 43–45, 47–49). Plaintiff testified that she no longer could work because her employment required her to lift things or stand for long periods of time, which caused her pain. (Tr. 23, 38, 43–45, 47–49). Still, the ALJ found that Plaintiff's reported limitations were not supported by the record, and, at most, were generally related to her cancer treatment and had record support from January 16, 2017, through December 4, 2018. (Tr. 23). After that period, the ALJ found Plaintiff had improved.

To come to this conclusion, the ALJ reviewed the medical records. The ALJ noted that Plaintiff had an initial biopsy on January 16, 2017, which is also her alleged onset date (Tr. 22 (relying on Tr. 321–24, 779)). Between February 8, 2017, and April 12, 2017, she treated with chemotherapy (Tr. 22, 683, 813). She subsequently underwent bilateral mastectomy on May 24, 2017, followed by additional chemotherapy from July 17, 2017 through August 28, 2017. (Tr. 22 (relying on Tr. 687, 784, 793)). The ALJ noted that records during that time show reports of nausea and fatigue from chemotherapy. (Tr. 22–23 (relying on Tr. 325, 721, 725, 765–66, 803–04, 807, 853, 862, 864, 946, 965, 977–82)).

After her mastectomy, in June 2017, Plaintiff attended physical therapy to help increase range of motion, strength, soft tissue mobility, and flexibility. (Tr. 23, 667–77). The physical therapy was also intended to help with any pain Plaintiff might be experiencing. (*Id.*). During this period, she generally denied pain, but did complain of fatigue due to chemotherapy. (Tr. 677). In August 2017, Plaintiff reported fatigue and "generalized aches." (Tr. 764). Yet, her physical examination was normal. (*Id.*). Based upon these records, the ALJ noted that Plaintiff treated with physical therapy and prescription medications for her pain during her breast cancer treatment course. (Tr. 23 (relying on Tr. 463–64, 467–677, 815, 819, 825, 833–42, 867, 869, 874, 948–50)).

8

Then, by September 2017, records show Plaintiff to be feeling better and reporting less fatigue (or even denying fatigue), but reporting crying episodes and mild depression. (Tr. 22 relying on Tr. 945–46)). Plaintiff also mentioned residual neuropathy during this period. (Tr. 23, 864, 872). Yet, there were no electrodiagnostic studies or related medications prescribed, and Plaintiff's physical examination was normal. (Tr. 23, (relying on Tr. 767–68)).

On September 15, 2017, cervical and thoracic x-rays showed moderate degenerative disc disease at C5-6 and C6-7. (Tr. 931–33). On the same date, concern for opiate dependency was noted as Plaintiff had been prescribed oxycodone as needed for her chemotherapy pain, but had filled her prescription consistently since February 2017, receiving 120 pills in August 2017, and 30 more on September 5, 2017, which she used by September 15. (Tr. 950). As a result, she was tapered off oxycodone. (*Id*.). Later in September 2017, Plaintiff complained of upper back pain, worse with sitting, laying down, and lifting. (Tr. 23 (relying on Tr. 867)). At that time, there was no referral to neurology and no MRI performed. (Tr. 23). Moreover, physical examination findings were unremarkable with normal strength and intact sensation in the upper extremities with Plaintiff's only complaint being tenderness in the right shoulder. (Tr. 870).

On October 5, 2017, Plaintiff had tissue expanders inserted, with saline filling visits thereafter, and breast implant insertion on February 1, 2018. (Tr. 22 (relying on Tr. 811, 819, 823). Reports from March 2018 office visits show no new complaints, and at a March 16, 2018 visit, pain was not an issue. (Tr. 22 (relying on Tr. 877–78)). One year after her mastectomy, a May 23, 2018 treatment note reflects complaints of acute left-sided abdominal and rib pain. (Tr. 23 (relying on Tr. 834)). Since rib pain could be related to her history of breast cancer, a CT was performed. (Tr. 23 (relying on Tr. 835)). It noted no acute findings in the chest, abdomen or pelvis, and the implants were intact. (Tr. 23 (relying on Tr. 836–37)). Further, there was no

evidence of malignancy or metastatic disease. (Tr. 23 (relying on Tr. 836–37, 842)). While she was instructed to follow up with a gastroenterologist, there is no evidence of any related medically determinable severe impairment. (Tr. 23, 838). Incidental findings from the May 2018 abdominal CT, noted mild degenerative changes of the spine (Tr. 23, 935). Likewise, x-rays of her left (non-dominant) hand on August 29, 2018, revealed only mild osteoarthritic changes, primarily in the thumb. (Tr. 23 (relying on Tr. 936–37)). On October 11, 2018, removal and replacement with capsulectomy was performed. (Tr. 23 (relying on Tr. 981-82)). Office visit notes from October 16, 2018, noted that Plaintiff denied back pain, joint pain or stiffness. (Tr. 23, 979-80). She further denied anxiety, difficulty concentrating, balance issues, or memory loss. (Tr. 23 (relying on Tr. 979-80)).

By December 4, 2018, oncology follow-up records state that she had no complaints other than about the appearance of her implants, with her next visit scheduled for six months later. (Tr. 23 (relying on Tr. 844, 848)). The ALJ accurately noted that there are no treatment records after December 4, 2018, and otherwise no evidence to support a finding of severe impairment after that date. (Tr. 23). Given this timeline, the ALJ concluded that Plaintiff was not disabled after December 4, 2018. A diagnosis standing alone—or Plaintiff's statement of symptoms is not enough to demonstrate a medically determinable impairment. *See* 20 C.F.R. §404.1521 ("We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)[.]"); *see also Young v. Sec'y of HHS*, 925 F.2d 146, 151 (6th Cir. 1990) (holding that diagnosis of an impairment is not enough). Thus, the ALJ did not err in concluding that Plaintiff's additional complained-of impairments were not medically determinable.

Further, although not required for non-medically determinable impairments, the ALJ did not ignore Plaintiff's claimed additional impairments (*i.e.*, degenerative disc disease, arthritis,

neuropathy, fatigue, and chronic right shoulder pain). Instead, the ALJ acknowledged the record evidence for each impairment and found that the record did not support work-related functional limitations. (Tr. 23). She also reiterated that, in determining Plaintiff's RFC, she considered all of Plaintiff's symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence, and other evidence. (Tr. 21). As detailed above, the ALJ addressed Plaintiff's claimed symptoms and the record evidence of the same. (Tr. 22–23). In sum, the ALJ did not err.

### B. Medical Improvement

Plaintiff's second argument is closely related to her first. She argues that, although her breast cancer was in remission as of December 4, 2018, her degenerative disc disease, arthritis, neuropathy, fatigue, and chronic right shoulder pain caused disabling limitations after that date. (Doc. 16 at 6–10). Under the regulations, a claimant may no longer be disabled if she has experienced medical improvement, which the regulations define as a "decrease in the medical severity of impairment(s) present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled and is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)." 20 C.F.R. § 404.1594(c)(1). The Commissioner's determination that a claimant has experienced work-related medical improvement sufficient to enable work must be based on substantial evidence. 20 C.F.R. § 404.1594(b)(5). Here, the record contains no evidence of any complaints or symptoms of any of Plaintiff's alleged impairments prior to her breast cancer diagnosis, mastectomy surgery, and chemotherapy treatments. Additionally, her complaints of upper back and shoulder pain, residual neuropathy, and fatigue during her cancer treatments were all connected to those

treatments, were mild, and treated conservatively (if treated at all). Then, within one year of beginning treatment, Plaintiff's physical examination findings were within normal functional range. (Tr. 26). And, just five days after implant revision in October 2018, Plaintiff denied many of the symptoms and issues that she now claims she has. (Tr. 26, 979–80). In fact, at her December 4, 2018 visit, just one month prior to the hearing, her only complaint was cosmetic. She did not like the appearance of her implants. (Tr. 23, 26, 844, 848).

Other than Plaintiff's subjective reports, there is no evidence that Plaintiff's symptoms existed before or meaningfully continued after the period during which the ALJ found Plaintiff disabled. Plaintiff did not include any of these diagnoses or limitations as disabling impairments in her disability application (Tr. 209); she did not provide evidence of any continued treatment for any of these impairments; and no physician opined that Plaintiff had any disabling impairments. So the ALJ properly determined that Plaintiff was no longer disabled due to medical improvement after her cancer treatments and breast reconstruction concluded. (Tr. 25–27). Substantial evidence supports the ALJ's decision.

## IV.    CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that judgment be entered in favor of Defendant.

## V.    PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which

objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: August 31, 2021                     /s/ Kimberly A. Jolson
                                          KIMBERLY A. JOLSON
                                          UNITED STATES MAGISTRATE JUDGE